Affirmed in Part and Reversed and Remanded in Part; and Memorandum Opinion
filed June 24, 2010.

 

In The

 

Fourteenth Court of
Appeals

___________________

 

NO. 14-08-00776-CV

___________________

 

Mark Stanford & Penny Stanford,
Appellants

 

V.

 

John Evans, Appellee



 



 

On
Appeal from the 133rd District Court

Harris County,
Texas



Trial Court Cause No. 2007-67277

 



 

 

MEMORANDUM OPINION

            This
appeal arises from a suit for property damages brought by appellants Mark
Stanford and Penny Stanford against their landlord, appellee John Evans, after
a home leased to the Stanfords by Evans was destroyed by a fire.  Evans filed a
motion for summary judgment claiming that he was not liable for any of the
Stanfords’ alleged damages.  The trial court granted Evans’s motion and entered
a take nothing judgment against the Stanfords.  In two issues, the Stanfords
contend that the trial court erred in granting summary judgment.  We affirm in
part, reverse in part, and remand for further proceedings.  

                                                                                        
I.           
Factual and
Procedural Background

In January 2005, the Stanfords signed a lease
agreement to lease a residence from Evans.  The lease agreement granted the
Stanfords an option to purchase the home from Evans if they met certain
requirements before the lease expired.  The Stanfords lived in the home until
July 2007, when the home and all of the Stanfords’ personal belongings were
destroyed in a fire.  Approximately two weeks after the fire, an electrician
inspected the home and discovered several problems with its electrical system. 
The Stanfords subsequently filed suit against Evans, alleging that Evans was
negligent in allowing the home’s electrical system to become overloaded and in
failing to upgrade the home’s electrical service panel.  The Stanfords sought
damages of over $87,000 for the loss of their personal belongings and $99,000
for the loss of the home’s value.  

            Evans filed a
motion for summary judgment, arguing in two grounds that he was not liable for
any of the Stanfords’ damage claims.  First, Evans alleged that several exculpatory
provisions in the lease protected him from liability for any damages to the
Stanfords’ personal property.  Next, Evans alleged that the Stanfords could not
recover damages for the home’s value because they had no ownership interest in
the home.  After considering Evans’s motion and the evidence produced by both
parties, the trial court entered a final judgment granting Evans’s motion and
ordering a take-nothing judgment against the Stanfords.  

In two issues, the Stanfords argue that the trial
court erred in granting summary judgment because (1) the exculpatory provisions
relied upon by Evans do not provide fair notice that Evans is not liable for
the consequences of his own negligence and (2) there is a genuine issue of
material fact as to whether the Stanfords notified Evans of their intent to
purchase the home and therefore possessed an ownership interest in the home.  

                                                                                                                                 
II.           
Standard of Review

We review the trial court’s grant of summary judgment
de novo.  Joe v. Two Thirty Nine Joint Venture, 145 S.W.3d 150, 156
(Tex. 2004).  To prevail on a traditional motion for summary judgment,[1] the movant must
show that there is no genuine issue of material fact and that judgment should
be granted as a matter of law.  See Tex.
R. Civ. P. 166a(c); KPMG Peat Marwick v. Harrison County Hous. Fin.
Corp., 988 S.W.2d 746, 748 (Tex. 1999).  A defendant moving for summary
judgment must conclusively negate at least one essential element of each of the
plaintiff’s causes of action or conclusively establish each element of an
affirmative defense.  Sci. Spectrum, Inc. v. Martinez, 941 S.W.2d 910,
911 (Tex. 1997); Brown v. Hearthwood II Owners Ass’n, 201 S.W.3d 153,
159 (Tex. App.—Houston [14th Dist.] 2006, pet. denied).  We take as true all
evidence favorable to the non-movant and indulge every reasonable inference and
resolve any doubts in the non-movant’s favor.  Joe, 145 S.W.3d at 157; Aguirre
v. Vasquez, 225 S.W.3d 744, 750 (Tex. App.—Houston [14th Dist.] 2007, no
pet.).  When, as here, the trial court’s order granting summary judgment does
not specify the grounds upon which it was granted, we will affirm the judgment
if any of the theories advanced by the movant are meritorious.  See Dow
Chem. Co. v. Francis, 46 S.W.3d 237, 242 (Tex. 2001); Brocail v. Detroit
Tigers, Inc., 268 S.W.3d 90, 99 (Tex. App.—Houston [14th Dist.] 2008, pet.
denied).  

 

 

                                                                                      
III.           
The Lease’s Exculpatory
Provisions

In
his first ground for summary judgment, Evans argued that several exculpatory
clauses contained within the lease agreement relieved him from any liability
for the Stanfords’ claims for personal property damages.  Evans relied upon
sections four and twenty-nine of the lease agreement in support of this
contention.  Section four reads, in relevant part: 

[LANDLORD IS] NOT RESPONSIBLE
FOR DAMAGE OR LOSS OF [TENANTS’] PERSONAL PROPERTY STORED IN THE PREMISES.  FOR
THIS REASON [LANDLORD] ENCOURAGE[S] [TENANTS] TO PROTECT [TENANTS’] PERSONAL
PROPERTY WITH [TENANTS’] INSURANCE.

Section twenty-nine reads: 

29. Indemnification. 
[Landlord] shall not be liable for any damage or injury to [Tenants], [Tenants’]
family, employees, or visitors, or any other persons, or to any property,
occurring in or near the premises, and [Tenants] agree[s] to hold [Landlord],
[Landlord’s] estate, heirs, employees, agents and contractors harmless from any
claims for damages no matter how caused.  

            The
Stanfords argue in their first issue that the trial court erred in granting
summary judgment because the provisions relied upon by Evans did not provide
them with fair notice that Evans would be protected from liability for his own
negligent acts.  

A.     The
Fair Notice Requirements 

Because indemnifying or releasing a party from its
own negligence involves an extraordinary shifting of risk, the Texas Supreme
Court has enacted fair notice requirements—including the express negligence
doctrine and the conspicuousness requirement—that apply to such agreements.  Dresser
Indus., Inc. v. Page Petroleum, Inc., 853 S.W.2d 505, 508 (Tex. 1993); Ayres
Welding Co., Inc. v. Conoco, Inc., 243 S.W.3d 177, 181 (Tex. App.—Houston
[14th Dist.] 2007, pet. denied).  These fair notice requirements apply to
indemnity agreements and releases in which a party is seeking to relieve itself
in advance of liability for its own negligence.  Dresser Indus., 853
S.W.2d at 508–09.  Compliance with the fair notice requirements is a question
of law for the court.  Id. at 509.  A release or indemnity provision
that fails to satisfy either of these requirements is unenforceable as a matter
of law.  Storage & Processors, Inc. v. Reyes, 134 S.W.3d 190, 192
(Tex. 2004).  

B.     The
Express Negligence Doctrine

Under the express negligence doctrine, a party
seeking to indemnify or release itself from the consequences of its own
negligence must express that intent in specific terms within the four corners
of the contract.  Ayres Welding, 243 S.W.3d at 181.  Indemnity
provisions that do not state the intent of the parties within the four corners
of the instrument are unenforceable as a matter of law.  English v. BGP
Int’l, Inc., 174 S.W.3d 366, 374 (Tex. App.—Houston [14th Dist.] 2005, no
pet.).  

Evans argues that sections four and twenty-nine of
the lease satisfy the requirements of the express negligence doctrine by
including language providing that he is “not responsible for damage or loss”
suffered by the Stanfords and that he is not liable for “any claims for damages
no matter how caused.”  Evans cites three cases in support of this contention. 
See Dupont v. TXO Prod. Corp., 663 F. Supp. 56, 57–58 (E.D. Tex. 1987)
(finding contract language indemnifying defendant from all claims “without
limit and without regard to the cause or causes thereof or the negligence of
any party or parties” satisfied express negligence doctrine under Texas
law); Maxus Exploration Co. v. Moran Bros., Inc., 817 S.W.2d 50, 51 n.1,
56–57 (Tex. 1991) (holding contract provision protecting indemnitee from
liability for all claims “without limit and without regard to the cause or
causes thereof or the negligence of any party or parties” satisfied the express
negligence test); Adams Res. Exploration Corp. v. Res. Drilling, Inc.,
761 S.W.2d 63, 64–65 (Tex. App.—Houston [14th Dist.] 1988, no writ) (finding
contract provisions indemnifying defendant for all claims “without limit and
without regard to the cause or causes thereof or the negligence of any party or
parties” clearly expressed parties’ intent and satisfied express negligence
doctrine).  Evans thus contends that the lease clearly and unambiguously states
the parties’ intent that he should not be liable for any damages to the
Stanfords’ personal property, even those allegedly caused by his own
negligence.  

The Stanfords argue that the lease fails the express
negligence test because neither section four nor section twenty-nine includes
the word negligence or any synonym thereof.  The Stanfords also correctly note
that the exculpatory provisions discussed in each of the cases cited by Evans
include language explicitly disclaiming liability for the negligent acts of any
party.  See Dupont, 663 F. Supp. at 57 n.1; Maxus Exploration, 817
S.W.2d at 51 n.1; Adams Res. Exploration Corp., 761 S.W.2d at 64.  

The express negligence doctrine does not require an
indemnity or release provision to include the word “negligence.”  See Lehmann
v. Har-Con Corp., 76 S.W.3d 555, 562 n.3 (Tex. App.—Houston [14th Dist.]
2002, no pet.); Banzhaf v. ADT Sec. Sys. Sw., Inc., 28 S.W.3d 180, 189
(Tex. App.—Eastland 2000, pet. denied).  When exculpatory provisions fail the
express negligence test, however, it is typically because they fail to
specifically mention negligence or the extent of the coverage to be applied.  See
Trinity Indus., Inc. v. Ashland, Inc., 53 S.W.3d 852, 869 (Tex. App.—Austin
2001, pet. denied); Adams Res. Exploration Corp., 761 S.W.2d at 65.  In
order for an exculpatory provision to meet the requirements of the express
negligence doctrine, the parties’ intent to indemnify the indemnitee’s own
negligent acts must be clearly stated within the four corners of the
agreement.  See Lehmann, 76 S.W.3d at 562 n.3; Banzhaf, 28 S.W.3d
at 189.  

            After reviewing
the lease agreement, we conclude that the exculpatory provisions relied upon by
Evans fail to satisfy the requirements of the express negligence doctrine.  The
lease’s exculpatory provisions broadly assert that Evans will be held harmless
from “any claims” or “any damage,” “no matter how caused.”  Although Evans was
not specifically required to use the word “negligence” in order to escape
liability, the broad language of this lease does not specifically and
unambiguously express the parties’ intent to hold Evans blameless for his own
negligent acts.  See Enserch Corp. v. Parker, 794 S.W.2d 2, 8 (Tex.
1990); see also Trinity Indus., 53 S.W.3d at 868–69.  Therefore, as a
matter of law, this lease does not indemnify Evans from the consequences of his
own negligence.  See Fisk Elec. Co. v. Constructors & Assocs., 888
S.W.2d 813, 814–15 (Tex. 1994); English, 174 S.W.3d at 374.[2]  

Because the exculpatory provisions relied upon by
Evans do not satisfy the requirements of the express negligence doctrine, Evans
is unable to show that he is entitled to judgment as a matter of law and that there
is no genuine issue of material fact with respect to the Stanfords’ claim for
damages to their personal property.  The trial court, therefore, could not
properly grant summary judgment based upon the first ground alleged by Evans.[3]  We sustain the
Stanfords’ first issue.  

                                                           
IV.           
The Stanfords’
Ownership Interest in the Home

In
his second ground for summary judgment, Evans alleged that the Stanfords were
precluded from recovering damages for the value of the home itself because they
had no ownership interest in the home.  Evans asserted that the Stanfords had
no ownership interest because they failed to provide him with proper notice of
their intent to exercise their option to purchase the home (the “Purchase
Option”) before the lease expired.  The Purchase Option is a handwritten
provision located at the end of the lease which reads: 

If tenant makes all lease payments by the 7th of each month
owner shall sell this property to tenant for $99,000.00 with no down payment
and no closing costs except for [illegible] of attorney[’]s fee[s].  Term[s] of
the note will be 30 years with no prepayment penalty, interest rate to be 9
[illegible]%.  Principal and interest to be $851.40 plus taxes and insurance. 
Tenant will notify owner 30 days before lease end if the option is desired.  

In their second issue, the Stanfords argue that the
summary judgment should be reversed because they provided Evans with notice of
their intent to purchase the home more than thirty days before the lease
expired,[4]
thereby creating a genuine issue of material fact as to whether they possessed
an ownership interest in the home.  

A.     General
Rule: Strict Compliance 

            The holder of an
option to purchase property possesses the right to compel a sale of the
property on stated terms before the option expires.  Comeaux v. Suderman,
93 S.W.3d 215, 219–20 (Tex. App.—Houston [14th Dist.] 2002, no pet.).  A
contract between the option holder and the property owner is created when the
option holder properly exercises the purchase option.  City of Brownsville
v. Golden Spread Elec. Coop., Inc., 192 S.W.3d 876, 880 (Tex. App.—Dallas
2006, pet. denied).  Acceptance of an option must be unqualified, unambiguous,
and strictly in accordance with the terms of the agreement.  See City of
Brownsville, 192 S.W.3d at 880; Comeaux, 93 S.W.3d at 220.  Failure
to exercise an option according to its terms, including defective or untimely
acceptance, amounts to a rejection.  Comeaux, 93 S.W.3d at 220.  Applying
these rules to the present case, the Stanfords would obtain an ownership
interest in the home by (1) timely making all rent payments[5] and (2) notifying
Evans of their intent to purchase the home thirty days before the lease
expired.  

B.     Notice
Required Under the Purchase Option

Evans contends that, under the terms of the lease,
the Stanfords were required to provide written notice of their intent to
exercise the Purchase Option by certified or registered mail.  According to
Evans, the Stanfords’ failure to provide written notice in the manner specified
by the lease precludes them from claiming an ownership interest in the home. 
The Stanfords respond that the Purchase Option does not provide a specific
method of providing notice.  

Here, the Purchase Option does not specify what
manner of notice the Stanfords were required to provide; it simply states that
the Stanfords must furnish notice thirty days before the lease expires.  We
consider the entire instrument when construing contractual provisions, however,
and no single provision taken alone will control.  Luccia v. Ross, 274
S.W.3d 140, 146 (Tex. App.—Houston [1st Dist.] 2008, pet. denied).  The more
specific provisions of a contract control over the general.  See Ayres
Welding, 243 S.W.3d at 181.  Paragraph twenty-four of the lease states that
“[a]ll notices to be given under this agreement will be given by certified mail
or registered mail.”  Therefore, under the more specific terms of the lease,
the Stanfords were required to give written notice of their intent to exercise
the Purchase Option through certified or registered mail.  See Besteman v.
Pitcock, 272 S.W.3d 777, 784–85 (Tex. App.—Texarkana 2008, no pet.)
(concluding written notice of intent to exercise purchase option was required;
although option provision did not specify what form of notice was required, general
notice provision of contract specified written notice).  It is undisputed that
the Stanfords never provided Evans with written notice of their intent to
exercise the Purchase Option.  To overcome this failure, the Stanfords argue
that Evans waived his right to receive written notice concerning the lease.  

C.     Waiver


Contractual rights can be waived.  Johnson v.
Structured Asset Servs., LLC, 148 S.W.3d 711, 722 (Tex. App.—Dallas 2004,
no pet.).  Waiver is defined as the intentional relinquishment of a known right
or intentional conduct inconsistent with claiming that right.  Jernigan v.
Langley, 111 S.W.3d 153, 156 (Tex. 2003); Mandell v. Mandell, 214
S.W.3d 682, 692 (Tex. App.—Houston [14th Dist.] 2007, no pet).  Waiver may be
established by a party’s express renunciation of a known right or by silence or
inaction for a period long enough to demonstrate an intention to yield the
known right.  Aguiar v. Segal, 167 S.W.3d 443, 451 (Tex. App.—Houston
[14th Dist.] 2005, pet. denied).  Waiver is largely a matter of intent.  Beal
Bank, S.S.B. v. Schleider, 124 S.W.3d 640, 654 (Tex. App.—Houston [14th
Dist.] 2003, pet. denied) (op. on reh’g).  For implied waiver to be found, the
surrounding facts and circumstances must clearly demonstrate intent.  Id.;
see also Taub v. Houston Pipeline Co., 75 S.W.3d 606, 624 (Tex.
App.—Texarkana 2002, pet. denied).  To establish waiver by conduct, “the
conduct must be ‘unequivocally inconsistent’ with claiming a known right.”  Potter
v. Clear Channel Outdoor, Inc., No. 01-07-00578-CV, 2009 WL 1886168, at *7
(Tex. App.—Houston [1st Dist.] July 2, 2009, no pet.) (mem. op.) (quoting Van
Indep. Sch. Dist. v. McCarty, 165 S.W.3d 351, 353 (Tex. 2005)).  

Evans argues, and we agree, that the Stanfords’
waiver argument must fail because the Stanfords do not point to any specific
instances where a notice required by the lease to be provided by certified or
registered mail was provided orally by either party.  The Stanfords’ evidence
of waiver consists of general averments in Mark Stanford’s affidavit that both
parties discussed “problems or events concerning the lease by telephone” and
that neither party ever provided notice concerning the lease by certified or
registered mail.  Because these averments do not reference specific instances
where Evans accepted or provided oral notice as a substitute for written
notice, they do not evidence any “clear, unequivocal, and decisive acts”
conclusively establishing Evans’s intent to waive his right to receive written
notice regarding the lease through certified or registered mail.  See Taub,
75 S.W.3d at 624; see also Jernigan, 111 S.W.3d at 156 (“There can be no
waiver of a right if the person sought to be charged with waiver says or does
nothing inconsistent with an intent to rely upon such right.”).[6]  

Because of the undisputed evidence that the Stanfords
did not provide written notice of their intent to exercise the Purchase Option through
certified or registered mail and the Stanfords’ failure to prove Evans waived
his right to receive such notice, there is no genuine issue of material fact as
to whether the Stanfords possessed an ownership interest in the home.  The
trial court, therefore, did not err in granting summary judgment with respect
to the Stanfords’ claims for damages related to the value of the home.  We
overrule the Stanfords’ second issue.  

                                                                                                                                                      
V.           
Conclusion

After concluding the exculpatory provisions relied
upon by Evans fail to satisfy the requirements of the express negligence
doctrine, we reverse that portion of the trial court’s grant of summary
judgment related to the Stanfords’ claims for damages to personal property. 
Because no genuine issue of material fact exists regarding the Stanfords’
ownership interest in the home, we affirm that portion of the trial court’s
grant of summary judgment denying the Stanfords’ damages for the value of the
home.  Accordingly, we affirm the judgment of the trial court in part, reverse
the judgment of the trial court in part, and remand the case for further
proceedings consistent with this opinion.  

 

                                                                                    

                                                                        /s/        Leslie
B. Yates

                                                                                    Justice

 

 

 

Panel consists of Justices
Yates, Frost, and Brown.

 









[1] Evans labeled his motion
as a “Motion for Summary Judgment” and attached evidence in its support, but
failed to denote whether he sought summary judgment on traditional or
no-evidence grounds.  He also failed to cite to either of the summary judgment
rules.  See Tex. R. Civ. P. 166a(c),
(i).  Evans’s motion outlines the legal standard for succeeding on traditional
grounds, but also intermixes language from the no-evidence rule.  In the
portion containing no-evidence language, Evans fails to “state the elements as
to which there is no evidence.”  Tex. R.
Civ. P. 166a(i).  For these reasons, we analyze Evans’s motion as a
traditional motion for summary judgment.  See, e.g., J.M.K. 6,
Inc. v. Gregg & Gregg, P.C., 192 S.W.3d 189, 195 (Tex. App.—Houston
[14th Dist.] 2006, no pet.) (treating movant’s motion for summary judgment as
traditional because the motion failed to specify whether it was brought under
traditional or no-evidence grounds, thus providing non-movant with insufficient
notice that movant sought no-evidence summary judgment).  





[2] Our holding is consistent
with other cases interpreting the express negligence doctrine.  In the
following cases, reviewing courts held that indemnity or release provisions did
not meet the requirements of the express negligence doctrine because the
exculpatory provisions did not clearly indemnify or release the parties from
their own negligent acts.  See Ethyl Corp. v. Daniel Constr. Co., 725
S.W.2d 705, 707–08 (Tex. 1987); English, 174 S.W.3d at 374–75; DDD
Energy, Inc. v. Veritas DGC Land, Inc., 60 S.W.3d 880, 883–84 (Tex.
App.—Houston [14th Dist.] 2001, no pet.); Trinity Indus., 53 S.W.3d at
869; Lee Lewis Constr., Inc. v. Harrison, 64 S.W.3d 1, 21–22 (Tex.
App.—Amarillo 1999), aff’d, 70 S.W.3d 778 (Tex. 2001); Monsanto Co.
v. Owens-Corning Fiberglas Corp., 764 S.W.2d 293, 295 (Tex. App.—Houston
[1st Dist.] 1988, no writ).  These decisions may be compared with the following
cases where the reviewing court held that the express negligence doctrine was
satisfied by contractual language specifically mentioning the consequences of
the parties’ negligence.  See Ayres Welding, 243 S.W.3d at 181–82; Tynes
v. Nations Rent of Tex. L.P., No 10-05-00372-CV, 2006 WL 2438683, at *2
(Tex. App.—Waco Aug. 23, 2006, no pet.) (mem. op.); Sydlik v. REEIII, Inc.,
195 S.W.3d 329, 334–35 (Tex. App.—Houston [14th Dist.] 2006, no pet.); Banzhaf,
28 S.W.3d at 189–90; Adams Res. Exploration Corp., 761 S.W.2d at 65.  





[3] Evans argues that he is
not liable even if the express negligence test is not satisfied because the
Stanfords possessed actual knowledge of Evans’s intent to indemnify and release
himself from his own negligent acts.  Evans averred in an affidavit that he
stressed the lease’s exculpatory provisions when the lease was signed.  While
actual notice of an indemnity or release provision may serve as a substitute
for the conspicuousness prong of the fair notice doctrine, it does not serve as
a substitute for the express negligence requirement.  Sydlik, 195 S.W.3d
at 333.  Thus, we need not discuss whether the requirements of the
conspicuousness test are satisfied.  





[4] In an affidavit filed as
summary-judgment evidence, Mark Stanford stated that he notified Evans more
than thirty days before the end of the lease term that the Stanfords wished to
purchase the home.  According to Stanford, Evans responded that he would
discuss the terms of the purchase after he returned from a vacation.  In an
affidavit filed by Evans, Evans averred that the Stanfords never provided any
notice of their intent to exercise the Purchase Option.  





[5] Evans does not allege
that the Stanfords failed to timely pay rent; we therefore infer that the
Stanfords satisfied the first requirement under the Purchase Option.  See
Aguirre, 225 S.W.3d at 750 (stating that reviewing courts indulge every
reasonable inference in the non-movant’s favor).  





[6] Compare Beal Bank,
124 S.W.3d at 654 (concluding representations that “an extension would not be a
problem,” the parties were “set to go,” and the bank would “get back to”
appellant did not evidence bank’s waiver of loan provision requiring all loan
modifications to be made in writing), and Cattle Feeders, Inc. v. Jordan,
549 S.W.2d 29, 33 (Tex. Civ. App.—Corpus Christi 1977, no writ) (finding no
waiver of right to written notice of intent to exercise purchase option where
only evidence of waiver was general statements that land owner was in the area
occasionally and knew appellant was using the land and had made some
improvements), with SP Terrace, L.P. v. Meritage Homes of Tex., LLC, —
S.W.3d — , No. 01-09-00155-CV, 2010 WL 1840183, at *6–7 (Tex. App.—Houston [1st
Dist.] May 6, 2010, no pet. h.) (finding appellants raised genuine issue of
fact regarding appellee’s waiver of deadline to file subdivision plat by providing
facts showing (1) appellee orally agreed to extend filing deadline, (2)
appellee failed to object after receiving appellants’ written request to extend
the deadline, (3) appellee’s representatives continued working with appellants
on development plans several months after filing deadline passed, and (4)
appellants referenced specific date on which appellee’s representatives met
with appellants to discuss the subdivision changes).