Walter H. BANZHAF and M. Rose Banzhaf, Individually and as Representatives of the Estate of Frederick John Banzhaf; Angie King; and Herman's Sporting Goods, Inc., Appellants,

v.

ADT SECURITY SYSTEMS SOUTHWEST, INC., Appellee.

No. 11–99–00227–CV.

Court of Appeals of Texas, Eastland.

Sept. 7, 2000.

Charles W. McGarry, Law Offices of Charles W. McGarry, Dallas, Kimberly Munson, J. Brantley Saunders, The Barbknecht Firm, Dallas, Malcolm Guy Renwick, Renwick & Pierret, Arlington, Randall R. Moore, Tony D. Crabtree, Hyatt, Crabtree & Moore, Dallas, for appellants.

Jeffrey Tillotson, John T. Cox, III, Lynn, Stodghill Melsheimer & Tillotonson, Dallas, for appellee.

Panel consists of: ARNOT, C.J., and WRIGHT, J., and McCALL, J.

## OPINION

TERRY McCALL, Justice.

Angie King was severely injured, and Frederick John Banzhaf was killed during a robbery of the Herman's Sporting Goods, Inc. (Herman's) store in Richardson.[1] Both were employees of Herman's. The robbery was committed by another Herman's employee and his accomplice. King and the parents of Banzhaf sued ADT Security Systems Southwest, Inc. (ADT), which had provided the security system for Herman's. Plaintiffs alleged negligence, design defect, and violations of the Texas Deceptive Trade Practices—Consumer Protection Act (DTPA), TEX. BUS. & COM. CODE ANN. § 17.01 et seq. (Vernon 1987 & Pamph. Supp.2000). ADT subsequently filed a third-party claim against Herman's, seeking indemnification based upon the written contracts between ADT and Herman's. The trial court granted summary judgment to ADT against plaintiffs and, after a bench trial, granted ADT a judgment against Herman's. We reverse and remand that portion of ADT's summary judgment against the Banzhafs on their DTPA claim because ADT failed to include the Banzhafs in their motion for summary judgment on that claim. We affirm the remainder of ADT's judgment against the plaintiffs and ADT's judgment against Herman's.

### Background Facts

The following facts are undisputed. Prior to its liquidation in bankruptcy, Herman's was a nationwide chain of sporting goods stores. Herman's had a national contract with ADT for ADT to install and monitor alarm systems in all of the Herman's stores throughout the country. The national contract set out certain basic alarm services that ADT would provide the various stores, but an individual store could vary those basic services by executing a separate written agreement with ADT. The Richardson store executed a separate agreement with ADT.

Herman's had its own internal department in charge of security, and Herman's selected the alarm services to be used in each store. When negotiating the national contract, ADT offered Herman's the opportunity to contract for any alarm monitoring service that ADT made available. One of the features offered by ADT was a "duress code" feature; however, Herman's expressly refused the duress code feature. The duress code feature allows a designated user of the security system to silently trigger the alarm to indicate that the user is being held hostage. To trigger the alarm, the user enters a special single-digit code, along with his or her own password.

Even after the national contract was signed, Herman's continued to refuse any

---

1. Banzhaf's estate is represented by his parents who also made their claims based upon his death. We will refer to King and the Banzhafs collectively as "plaintiffs."

duress code feature for its new stores.[2] That policy was in effect at the time of the robbery of the Richardson store. Herman's did select a feature known as the "late opening/closing" feature that ran on a pre-set 14–hour cycle. Upon the expiration of the cycle, Herman's either had to open the store and turn the alarm off or leave the store and turn the system on. If a particular Herman's store needed to have employees remain in the store past the normal 14–hour cycle for inventory or for other purposes, certain authorized Herman's employees could extend the cycle by entering their passcode and the number of hours they wished to extend the cycle. King, as assistant manager of the Richardson store, was authorized to extend the cycle.

The alarm system selected by Herman's for all its stores was designed to be activated only when the store was closed and when all employees had left the premises. ADT did not provide daytime monitoring services or guards to Herman's, and ADT never responded to daytime security matters at Herman's in Richardson. .

King, Banzhaf, and one other employee were closing the Richardson store one evening. King had locked the main front door but left a metal gate over the door partly open to allow employees to exit through the door after setting the alarm. Just before the three employees were ready to leave, they were confronted in the store by James Langston, another Herman's employee, who was armed and had an accomplice. Langston asked King for the code to the alarm. King gave Langston her code and explained to him how to extend the store's closing time. Langston extended the closing time. Either Langston or his accomplice then killed Banzhaf and the other employee and tried to kill King. King suffered a blunt force injury to her head and a slashing of her throat. She survived, however, and Langston and his accomplice were caught and convicted.

### King's and Banzhafs' Claims

■ ADT's motion for summary judgment against King and the Banzhafs contained not only a motion for traditional summary judgment under TEX.R.CIV.P. 166a(b) & (c), but also a motion for a "no evidence" summary judgment under TEX. R.CIV.P. 166a(i).[3] The motion for traditional summary judgment asserted that ADT owed no duty to King and the Banzhafs, that there was not a design defect or the design defect claim of plaintiffs was barred because the alleged defect was "open and obvious," and that King was not a consumer within the DTPA.[4] ADT's motion for a "no evidence" summary judgment asserted that, even if ADT had a duty, there was no evidence that ADT breached that duty and that there was no evidence to support a conclusion that any act or omission of ADT caused King's injuries or Banzhaf's death. In granting summary judgment to ADT, the trial court did not state on what grounds it relied. Therefore, plaintiffs must defeat each summary judgment ground urged by ADT. *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex.

2. Herman's viewed the duress code feature as potentially dangerous to its employees, one that could create a situation in which Herman's employees might be held hostage. Herman's had a written security policy that encouraged its employees to cooperate during a robbery and to not endanger themselves.

3. We again suggest that the better practice is to file separate motions relating to conceptually distinct Rule 166a(c) and Rule 166a(i) summary judgments. Under a motion for a "no evidence" summary judgment, we review only the evidence presented by the non-movant. Rule 166a(i). Analysis is made more difficult when it appears that the movant may be relying on his or her summary judgment evidence yet is asserting that there is no evidence on a particular element of the nonmovant's case. *Kelly v. LIN Television of Texas*, 27 S.W.3d 564 (Tex.App.—Eastland, 2000, no pet'n h.).

4. It is not apparent from the record why ADT failed to include the Banzhafs in their motion on the DTPA claim.

1989); *Rogers v. Ricane Enterprises, Inc.,* 772 S.W.2d 76, 79 (Tex.1989).

▮ A trial court must grant a motion for a traditional summary judgment if the moving party establishes that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Rule 166a(c); *Lear Siegler, Inc. v. Perez,* 819 S.W.2d 470, 471 (Tex. 1991). A trial court properly grants summary judgment in favor of a defendant if the defendant conclusively establishes all elements of an affirmative defense or conclusively negates at least one element of the plaintiff's claim. *American Tobacco Company, Inc. v. Grinnell,* 951 S.W.2d 420, 425 (Tex.1997). When reviewing a traditional summary judgment, we take as true evidence favorable to the non-movant and indulge every reasonable inference and resolve any doubts in favor of the non-movant. *American Tobacco Company, Inc. v. Grinnell, supra; Nixon v. Mr. Property Management Company, Inc.,* 690 S.W.2d 546, 548–49 (Tex.1985).

▮ When the motion is for a "no evidence" summary judgment, we review only the evidence presented by the non-movant. Rule 166a(i); *Hight v. Dublin Veterinary Clinic,* 22 S.W.3d 614 (Tex. App.—Eastland 2000, no pet'n h.). As we do when there is a motion for a traditional summary judgment, we accept as true evidence favorable to the non-movant and indulge every reasonable inference and resolve all doubts in favor of the non-movant. Hight v. Dublin Veterinary Clinic, supra. If the non-movant presents evidence that is more than a scintilla, a no evidence summary judgment is improper. *Hight v. Dublin Veterinary Clinic, supra.*

### 1. The Duty Question

▮ Plaintiffs' negligence claim required proof of three elements: a legal duty owed by ADT to them; a breach of that duty; and damages proximately resulting from that breach. *Greater Houston Transportation Co. v. Phillips,* 801 S.W.2d 523, 525 (Tex.1990). ADT's motion for a traditional summary judgment asserted that ADT owed no legal duty to plaintiffs, and ADT presented evidence to negate each duty theory presented by plaintiffs. In their second issue, plaintiffs claim that the trial court erred in granting summary judgment because ADT had a legal duty "to exercise reasonable care in providing security for the persons it was hired to protect"; there is evidence of a breach of the duty; and that breach was a proximate cause of damages to each plaintiff. We need only discuss the duty question.

Plaintiffs advance several theories to support their contention that ADT owed them a duty. They claim that the contracts between Herman's and ADT created a duty to protect employees. Similarly, plaintiffs claim that ADT's "control" of the premises created the duty to protect employees. According to plaintiffs, ADT's duty could also be based on RESTATEMENT (SECOND) OF TORTS § 324A (1965) because ADT undertook the providing of security services to Herman's employees. Plaintiffs finally contend that their claim sounds in tort as well as contract; therefore, ADT owed a duty separate and apart from the contracts.

▮ Plaintiffs' claim of a contractual legal duty is premised on an assumption that ADT's being in the security business required it to protect Herman's employees. That premise is too broad. ADT is in the business of providing security services for both property and employees, but it provides those services only pursuant to contracts with its customers. The customer selects the services for which it will pay. The uncontroverted testimony, including that by Herman's director of security, was that the alarm system selected by Herman's, including the late open/close feature, was to protect Herman's property and merchandise after closing when no employees were in the store. The alarm was only on when there were no employees in the store. The uncontroverted evi-

dence was that, by written contract, Herman's selected the alarm security devices it wanted and the monitoring service it wanted ADT to provide and that it expressly rejected the duress code feature. The uncontroverted evidence by ADT also demonstrated that the alarm system and monitoring service provided to Herman's pursuant to the national contract and the local contract did not fail. There was no duty owed to plaintiffs under the contracts.

■ Plaintiffs also contend that ADT "controlled" Herman's premises and, therefore, that ADT had a duty to exercise ordinary care to protect invitees from the criminal acts of third parties. As a general rule, a defendant has no legal duty to protect another from the criminal acts of a third person, but there is an exception where one who controls the premises has reason to know of an unreasonable and foreseeable risk of harm to invitees. *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex.1995). We agree with plaintiffs that, in determining who controlled the Herman's premises for purposes of imposing a legal duty to protect against criminal acts of third parties, we must focus on who had specific control over the safety and security of the premises. *Exxon Corporation v. Tidwell*, 867 S.W.2d 19, 23 (Tex. 1993). We must find that plaintiffs have introduced more than a scintilla of evidence that ADT had specific control over the security of the premises where the criminal act took place. *Centeq Realty, Inc. v. Siegler, supra* at 197. Plaintiffs have failed to do so. The uncontroverted evidence shows that Herman's internal security department selected Herman's security measures, instructed Herman's employees on security-related matters, and set Herman's security policies. Herman's employees reported any criminal activity or suspicious activity to Herman's internal security department, not to ADT. The uncontroverted evidence shows that Herman's did not have ADT furnish guards or other daytime security. The fact that ADT monitored Herman's activated alarm after the store closed does not demonstrate the control required by *Centeq Realty* and *Exxon Corporation*.

■ Plaintiffs cite Section 324A as a basis for ADT's duty. Section 324A does not support a finding of duty here because it refers only to "[o]ne who undertakes, gratuitously or for consideration, to render services to another." An undertaking is required, and the person undertaking the affirmative course of conduct must recognize that the particular services undertaken are necessary for the protection of a third party. See *Colonial Savings Association v. Taylor*, 544 S.W.2d 116, 119 (Tex. 1976). As previously discussed, the uncontroverted evidence showed that ADT provided only those security devices and services for which Herman's contracted, and there was no evidence that ADT undertook to protect King and Banzhaf. Plaintiffs' evidence to the effect that ADT is in the security business to protect people and property did not contradict the evidence of ADT that ADT limited its obligations to Herman's by contract.

Plaintiffs contend that ADT owed a duty under tort principles because ADT, as a security company, had a duty to prevent foreseeable crimes and that the violent crime against King and Banzhaf was foreseeable to someone in the security business. We disagree with placing such a broad non-contractual duty on security companies. Plaintiffs' argument would shift the responsibility for protection against crime, without any contractual basis, from law enforcement agencies to security companies. Purchasers are free to contract for the particular security devices and services that they consider to be necessary. We are not aware of any case extending the duty of security companies beyond their contracts as suggested by plaintiffs, nor have plaintiffs cited any. ADT owed no duty to plaintiffs based on tort principles. We overrule plaintiffs' second issue.

## 2. *The Design Defect Claim*

In their third issue, plaintiffs claim that ADT marketed a product with a design defect because the alarm system did not have the duress code as a standard feature. To support a design defect claim under products liability law, a plaintiff must show that the product was defective and unreasonably dangerous and that the dangerous condition was a producing cause of the plaintiff's injury. *Lucas v. Texas Industries, Inc.*, 696 S.W.2d 372, 377 (Tex. 1984). There is a design defect when a product is manufactured in compliance with the manufacturer's specifications, but the product is considered defective because some aspect of the design configuration is deemed to render the product unreasonably dangerous. *Turner v. General Motors Corporation*, 584 S.W.2d 844, 851–52 (Tex.1979). A plaintiff demonstrates a design defect by evidence of a safer alternative design for the product. *Caterpillar, Inc. v. Shears*, 911 S.W.2d 379, 384 (Tex. 1995).

Plaintiffs only claim of a design defect is that ADT should have made the duress code a standard feature of the alarm system, not an optional one. Plaintiffs' expert compared the duress feature to an air bag in an automobile, stating that safety features should not be made optional. Automobile safety features are the subject of extensive federal regulation. See *Geier v. American Honda Motor Company*, —— U.S. ——, 120 S.Ct. 1913, 146 L.Ed.2d 914 (2000). The deterrence of crime involves many complex issues. Herman's adopted a policy of refusing the duress code because it believed that the use of the duress code might endanger employees. Herman's selected a security system to protect its property when its employees were not there. We refuse to abrogate a store owner's right to select the security devices and services that it deems best to protect its property or its employees. We find, as a matter of law, that plaintiffs have shown no defectively designed product in this case. Plaintiffs' third issue is overruled.

## 3. *King's DTPA Claims*

In their sixth issue, plaintiffs contend that the trial court erred in granting summary judgment on King's DTPA claim because King was a consumer. King had to demonstrate that she was a "consumer" to bring a claim under the DTPA. The DTPA defines a "consumer" as "an individual ... who seeks or acquires by purchase or lease, any goods or services." TEX. BUS. & COM. CODE ANN. § 17.45(4) (Vernon Pamph. Supp.2000). When an employer purchases goods or services for the benefit of an employee, the employee "acquires" those goods and services and is considered to be a consumer. *Kennedy v. Sale*, 689 S.W.2d 890, 892 (Tex. 1985). For the same reasons that we discussed in finding that ADT owed no duty to King, we find that she was not a consumer. Herman's selected a security system and monitoring services that would protect its property after the store closed. Plaintiffs' sixth issue is overruled.

## 4. *The Banzhafs' DTPA Claim*

Plaintiffs' first issue complains that the trial court erred in granting summary judgment on the Banzhafs' DTPA claim because ADT's motion for summary judgment does not address that claim. We agree. Summary judgment may only be granted on grounds expressly presented in the motion. *Science Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 912 (Tex. 1997). Plaintiffs' first issue is sustained.

Because we have found that the trial court correctly based the remainder of its summary judgment on the grounds we have discussed, we need not reach plaintiffs' fourth and fifth issues. *Carr v. Brasher, supra*; *Rogers v. Ricane Enterprises, Inc., supra*.

### ADT's Indemnification Claim Against Herman's

Plaintiffs' petition included a claim that ADT was negligent in installing and moni-

toring the Herman's security system. ADT filed a third party claim against Herman's, alleging that the contract required Herman's to indemnify ADT against plaintiffs' claim.

Prior to a bench trial on ADT's claim of indemnification, Herman's filed two separate motions for summary judgment against ADT. In both motions, Herman's argued that (1) ADT's claim for indemnity was barred by Texas Workers' Compensation laws, (2) the express negligence doctrine barred any recovery by ADT against Herman's, and (3) the indemnity provisions ADT seeks to enforce were not conspicuous. After extensive briefing and separate hearings, two different judges in the trial court reached the same conclusion and denied Herman's motions for summary judgment. Following a subsequent bench trial, the trial court again reached the same conclusion in a written opinion and upheld ADT's claim for indemnity. In its appeal, Herman's makes the same arguments. We agree with both the conclusion and the reasoning of the trial court.

### 1. Texas Workers' Compensation Act Does Not Bar ADT's Claim

■ The Texas Workers' Compensation Act specifically provides that a party may seek indemnification from a subscribing employer for a claim asserted by that employer's employee if there existed a written indemnity agreement prior to the employee's injury or death. *Enserch Corporation v. Parker*, 794 S.W.2d 2, 7 (Tex.1990)(quoting TEX.REV.CIV.STAT. ANN. art. 8306, § 3(d) (Vernon Supp. 1989)).[5] Herman's acknowledges that both the national contract and the Richardson contract contained an indemnity agreement but argues that the indemnity language is insufficient to show that Herman's expressly assumed liability for injuries to its employees. We disagree.

Herman's and ADT were the only parties to the two contracts. The indemnity provision is identical in both contracts and covers any claims against ADT "for failure of its equipment or service in any respect" brought by "any person, not a party to this agreement." According to the testimony of Herman's executives, Herman's selected an alarm system to protect its property when employees were not in the store. The employees were not parties to the agreement in any sense. We overrule Herman's first issue.

### 2. The Express Negligence Doctrine

■ To be enforceable, an indemnity provision must afford fair notice of its existence if the provision relieves a party of liability for its own negligence in advance. The fair notice requirements include the express negligence doctrine and the conspicuousness requirement. *Dresser Industries, Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 508 (Tex.1993); *Enserch Corporation v. Parker, supra* at 8. The compliance with both of the fair notice requirements is a question of law for the court. *Dresser Industries, Inc. v. Page Petroleum, Inc., supra* at 509–10.

■ The "express negligence doctrine" requires that a party seeking indemnity from the consequences of that party's own negligence must express that intent in specific terms within the four corners of the contract. *Dresser Industries, Inc. v. Page Petroleum, Inc., supra* at 508; *Ethyl Corporation v. Daniel Construction Company*, 725 S.W.2d 705, 707–08 (Tex.1987). The supreme court described the reason for adopting the doctrine:

> The intent of the scriveners is to indemnify the indemnitee for its negligence, yet be just ambiguous enough to conceal that intent from the indemnitor.

*Ethyl Corporation v. Daniel Construction Company, supra.* ADT made no attempt to conceal its purpose to be indemnified by Herman's in either contract.

■ The indemnity provision expresses the intent that Herman's would

---

5. Article 8306 is now recodified in TEX. LAB. CODE ANN. § 417.004 (Vernon 1996).

indemnify ADT for the latter's own negligent acts. Herman's agreed that:

IN THE EVENT ANY PERSON, NOT A PARTY TO THIS AGREEMENT, SHALL MAKE ANY CLAIM OR FILE ANY LAWSUIT AGAINST ADT FOR FAILURE OF ITS EQUIPMENT OR SERVICE IN ANY RESPECT, CUSTOMER [HERMAN'S] AGREES TO INDEMNIFY, DEFEND, AND HOLD ADT HARMLESS FROM ANY AND ALL SUCH CLAIMS AND LAWSUITS INCLUDING THE PAYMENT OF ALL DAMAGES, EXPENSES, COSTS, AND ATTORNEYS' FEES.

The express negligence doctrine does not require that the indemnity provision use the specific word "negligence." *Arthur's Garage, Inc. v. Racal–Chubb Security Systems, Inc.*, 997 S.W.2d 803, 814 (Tex. App.—Dallas 1999, no writ). The test is whether the parties made it clear in the agreement that it was their intent to provide for indemnification of the indemnitee's own negligent acts. *Enserch Corporation v. Parker, supra* at 8. The quoted language "for failure of its equipment or service in any respect" covers claims against ADT for negligence.

There is an additional reason for finding that plaintiffs' claims are covered by the indemnity provision. The agreement expressly makes the indemnity provisions applicable to loss, damage, or injury from "negligence, active or otherwise, of ADT." The indemnity provision is found in Paragraph E of the contracts. The first part of Paragraph E deals with ADT's liability to Herman's. It provides that ADT is not an insurer, that the customer shall obtain its own insurance, and that the value of ADT's services "are unrelated to the value of the customer's property or property of others located in customer's premises." The last part of Paragraph E deals with Herman's indemnity of ADT. In the middle of Paragraph E, the parties agreed that:

THE CUSTOMER [HERMAN'S] ... AGREES THAT ADT SHALL BE EXEMPT FROM LIABILITY FOR LOSS, DAMAGE OR INJURY DUE DIRECTLY OR INDIRECTLY TO OCCURRENCES, OR CONSEQUENCES THEREFROM, WHICH THE SERVICE OR SYSTEM IS DESIGNED TO DETECT OR AVERT; THAT IF ADT SHOULD BE FOUND LIABLE FOR LOSS, DAMAGE OR INJURY DUE TO A FAILURE OF SERVICE OR EQUIPMENT IN ANY RESPECT, ITS LIABILITY SHALL BE LIMITED TO A SUM EQUAL TO 100% OF THE ANNUAL SERVICE CHARGE OR $10,000, WHICHEVER IS LESS ... AS THE EXCLUSIVE REMEDY; AND *THAT THE PROVISIONS OF THIS PARAGRAPH SHALL APPLY IF LOSS, DAMAGE, OR INJURY,* IRRESPECTIVE OF CAUSE OR ORIGIN, *RESULTS* DIRECTLY OR INDIRECTLY TO PERSON OR PROPERTY FROM PERFORMANCE OR NONPERFORMANCE OF OBLIGATIONS IMPOSED BY THIS CONTRACT OR *FROM NEGLIGENCE, ACTIVE OR OTHERWISE, OF ADT,* ITS AGENTS OR EMPLOYEES. (Emphasis added)

Herman's first contends that the reference to ADT's negligence is not contained within the same sentence as the actual indemnity language as required by the express negligence doctrine. The Texas Supreme Court has rejected this contention; it is not a requirement of the express negligence doctrine. *Enserch Corporation v. Parker, supra* at 8.

Herman's also contends that the language concerning ADT's negligence refers only to the first part of Paragraph E dealing with ADT's attempt to limit its liability to Herman's. To adopt Herman's construction, we would have to ignore the phrase: "[A]nd that the provisions of this paragraph shall apply." The indemnity agreement is included in the provisions of Paragraph E; and, therefore, the indemnity provisions "shall apply if loss, damage,

or injury ... results ... from negligence, active or otherwise, of ADT." This language, which specifically references ADT's own negligence, also satisfies the express negligence rule. *Atlantic Richfield Company v. Petroleum Personnel, Inc.*, 768 S.W.2d 724, 726 (Tex.1989). Herman's second issue is overruled.

3. *The Indemnity Provision is Conspicuous*

■ Herman's third issue is that the indemnity provision is not conspicuous; and, therefore, it is not enforceable. To be conspicuous, "something must appear on the face of the [contract] to attract the attention of a reasonable person when he looks at it." *Dresser Industries, Inc. v. Page Petroleum, Inc.*, supra at 508. In *Dresser*, the Texas Supreme Court adopted the standard for conspicuousness found in the Uniform Commercial Code:

A term or clause is conspicuous when it is so written that a reasonable person against whom it is to operate ought to have noticed it. A printed heading in capitals (as: NON–NEGOTIABLE BILL OF LADING) is conspicuous. Language in the body of a form is "conspicuous" if it is in larger or other contrasting type or color. But in a telegram any stated term is "conspicuous."

TEX. BUS. & COM. CODE ANN. § 1.201(10) (Vernon Supp.2000); *Dresser Industries, Inc. v. Page Petroleum, Inc.*, supra at 510.

The indemnity provision in this case satisfies the standard. The indemnity provision is set forth in enlarged, all capital lettering. The lettering is in dark, boldface type so that it contrasts with the lighter, smaller type of the remaining contractual paragraphs. As in *Enserch*, where the court held that the indemnity language was sufficiently conspicuous, the entire Herman's national contract appears on one page. The indemnity provision in Paragraph E is directly above the signature line. A reasonable person's attention is attracted to the indemnity provision when looking at the contract.

■ In the Richardson store agreement, the indemnity provision is on the back page, but the contract itself specifically directs the reader's attention to the paragraph in which it is contained. On the front of the contract, just above the signature line for Herman's, is the directive:

**ATTENTION IS DIRECTED TO THE WARRANTY, LIMIT OF LIABILITY AND OTHER CONDITIONS ON REVERSE SIDE.**

Again, this language and the indemnity provision are in large, capital lettering and boldface typeset. Drawing attention to the "Limit of Liability" provision of the contract, which contains the indemnity provision, also makes the indemnity provision conspicuous. *Enserch Corporation v. Parker*, supra at 7. The different lettering of the indemnity agreement, its placement in the national contract, and the directing of attention to it in the Richardson contract satisfy the conspicuousness requirement. Herman's third issue is overruled.

In a fourth issue, Herman's argues that there is insufficient or no evidence to support the trial court's findings that Herman's expressly promised to indemnify ADT from claims based on ADT's own negligence and that the provision was prominently displayed. The contracts provide the evidence. Herman's fourth issue is overruled.

### This Court's Rulings

The summary judgment is reversed insofar as it provides that Walter H. Banzhaf and M. Rose Banzhaf take nothing on their DTPA claims, and those causes are remanded; the remaining portions of the trial court's judgments are affirmed.